**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDRE LEWIS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-1504** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SUPERINTENDENT** | : | |
| **MASON,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to Defendants' motion to dismiss. (Doc. No. 37.)  *Pro se* Plaintiff Andre Lewis ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Smithfield in Huntingdon, Pennsylvania ("SCI Smithfield"), has filed neither a brief in opposition nor a motion seeking an extension of time to do so.  Accordingly, because the time to respond has expired, the motion to dismiss is ripe for disposition.

## I.    BACKGROUND

On September 30, 2019, Plaintiff initiated the above-captioned case by filing a motion for a preliminary injunction and temporary restraining order against Defendants Superintendent Mason ("Mason"), Deputy Banta ("Banta"), Deputy Stedler ("Stedler"), C/O Jones ("Jones"), C/O Roxby ("Roxby"), and Lieutenant Contreras ("Contreras").  (Doc. No. 1.)  On September 5, 2019, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants John E. Wetzel

("Wetzel"), Mason, Captain Eustice ("Eustice"), Lieutenant Klick ("Klick"), Contreras, C/O Zabresky ("Zabresky"), C/O Phan ("Phan"), Jones, Roxby, and C/O Gruden ("Gruden").  *See Lewis v. Wetzel*, No. 1:19-cv-1543 (M.D. Pa.).  In an Order entered on September 11, 2019, the Court consolidated these actions because they "involve several of the same Defendants, arise from a common set of operative facts, and involve common questions of law."  (Doc. No. 7 at 2.)

On December 2, 2019, Defendants filed a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  (Doc. No. 23.)  On January 24, 2020, the Court received from Plaintiff a document in which he stated that he wished to dismiss Banta and Stedler as Defendants.  (Doc. No. 29.)  Plaintiff also stated that he wanted to "withdraw this suit with leave to amend the complaint." (*Id.*)  In an Order dated January 27, 2020, the Court dismissed Defendants Banta and Stedler with prejudice and granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Doc. No. 31.)  On February 5, 2020, the Court received a letter from Plaintiff, asking to withdraw his suit with leave to amend or refile the complaint.  (Doc. No. 33.)  In an Order dated February 10, 2020, the Court directed Plaintiff to either file his amended complaint by February 26, 2020 or notify the Court by that date if he wished to voluntarily dismiss the above-captioned action. (Doc. No. 34.)

The Court received Plaintiff's amended complaint on February 21, 2020. (Doc. No. 35.)[1]  In his amended complaint, Plaintiff has named Mason, Contreras, Phan, Zabresky, Jones, Roxby, Klick, and Wetzel as Defendants.  (Doc. No. 35.)[2] He avers that from June 27-29, 2019, while he was incarcerated at SCI Retreat, Defendants Phan, Jones, Roxby, Klick, Contreras, and Zabresky "all denied [him] liquid.  They turned off all [his] cell water trying to kill [him] by dehydration."  (*Id.* at 5.)  Plaintiff notified Defendant Mason of the lack of water on June 28, 2019 and alleges that she responded by telling him to stop "giving [her] staff a hard time." (*Id.*)  Plaintiff did not receive water until 5:00 a.m. on June 29 or 30, 2019 "after a medical emergency."  (*Id.*)  He maintains that he "suffered dehydration, chest pains, craps, and shortness of breath," and that a Registered Nurse "had to call for help to hydrate [him] and give [him a] breathing treatment."  (*Id.*)  Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights.  (*Id.* at

---

[1] In an Order dated February 25, 2020, the Court denied as moot Defendants' motion for a more definite statement given that Plaintiff had filed an amended complaint.  (Doc. No. 36.)

[2] Plaintiff's amended complaint does not name Eustice and Gruden as Defendants.  The Court, therefore, will direct the Clerk of Court to terminate them as Defendants from the docket in the above-captioned case.
   In their motion to dismiss, Defendants argue that Plaintiff's amended complaint has only named Mason, Wetzel, Jones, and Phan as Defendants.  (Doc. No. 39 at 6.)  This is incorrect. Plaintiff explicitly named Mason, Contreras, Phan, Zabresky, Jones, Roxby, Klick, and Wetzel as Defendants.  (Doc. No. 35 at 1-2.)

3

3.)[3] Defendants have also construed Plaintiff's amended complaint as raising a First Amendment retaliation claim.  As relief, Plaintiff seeks damages.  (*Id.* at 5.)

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility

---

[3] Although Plaintiff references the Fourteenth Amendment, he does not describe, and the Court does not discern, how this amendment is implicated.  In adopting the "more-specific-provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  *See Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010).  Here, because any alleged due process violations fit squarely within Plaintiff's First and Eighth Amendment claims, this rule forecloses any substantive due process claims Plaintiff may be raising.

4

that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

5

F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed."   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.    Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C.

6

§ 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Plaintiff's Complaint

Defendants seek dismissal of Plaintiff's amended complaint because: (1) Plaintiff failed to include sufficient allegations of personal involvement; (2) Plaintiff failed to allege a plausible claim of retaliation; and (3) Plaintiff failed to exhaust his

7

administrative remedies.  (Doc. No. 39.)  Defendants also request that the Court consolidate the above-captioned action with Plaintiff's pending action in 1:19-cv-1989.  (*Id.*)  The Court considers each argument in turn.

### 1.   Personal Involvement

Defendants first argue that Plaintiff has failed to sufficiently allege how each individual Defendant was personally involved in the violation of his Eighth Amendment rights.  (Doc. No. 39 at 11.)  Eighth Amendment claims have both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  *Id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *Id.*

In order to state an Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."  *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).  Conditions of confinement violate the Eighth Amendment if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities."  *Id.* at 347.  Such necessities include

"adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Upon review of Plaintiff's amended complaint, the Court cannot conclude that Plaintiff has failed to sufficiently allege personal involvement by all Defendants except for Defendant Wetzel.  As noted above, Plaintiff alleges that from June 27-29, 2019, Defendants Phan, Jones, Roxby, Klick, Contreras, and Zabresky "all denied [him] liquid.  They turned off all [his] cell water trying to kill [him] by dehydration."  (Doc. No. 35 at 5.)  Plaintiff notified Defendant Mason of the lack of water on June 28, 2019 and alleges that she responded by telling him to stop "giving [her] staff a hard time."  (*Id.*)  Plaintiff did not receive water until 5:00 a.m. on June 29 or 30, 2019 "after a medical emergency."  (*Id.*)  He maintains that he "suffered dehydration, chest pains, craps, and shortness of breath," and that a Registered Nurse "had to call for help to hydrate [him] and give [him a] breathing treatment."  (*Id.*)  Plaintiff, therefore, has plausibly alleged an Eighth Amendment conditions of confinement claim against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick.  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 228 (3d Cir. 2015) (concluding that allegations regarding a complete denial of water for three (3) days poses a "clear 'substantial risk of harm' to an inmate").

9

With respect to Defendant Wetzel, however, there are no averments related to him in the body of the amended complaint.  Thus, Plaintiff's claims against him are subject to dismissal for that reason alone.  *See Robinson v. Wheary*, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing complaint pursuant to screening provisions of 28 U.S.C. § 1915(e)(2) where "the caption of the complaint names numerous individual defendants, [but] contains no well-pleaded factual averments relating to these specific defendants in the body of the complaint").  Accordingly, the Court will grant Defendants' motion to dismiss with respect to Plaintiff's claims against Defendant Wetzel but deny it with respect to his Eighth Amendment claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick.

## 2.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First

Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related

to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Here, nothing in Plaintiff's amended complaint suggests what protected activity Plaintiff engaged in prior to Defendants allegedly retaliating against him by turning off the water to his cell. His amended complaint, as pled, does nothing more than set forth a threadbare recital of the first requirement necessary to establish a retaliation claim. Accordingly, the Court will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment retaliation claim.

### 3.    Exhaustion of Administrative Remedies

Defendants next assert that dismissal of Plaintiff's amended complaint is required because not only does it "fail to sufficiently allege that he exhausted his administrative remedies, it explicitly **concedes** that he did not." (Doc. No. 39 at 13.) For the reasons set forth below, the Court concludes that dismissal on this basis is not proper at this time.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S.

731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997(e).  The exhaustion requirement is mandatory.  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").  Failure to exhaust is an affirmative defense that must be pled by the defendant.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement.  *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court.  *Id.*  Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court.  *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).  Courts have concluded

that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot

14

excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.*

15

Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018).  To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

In his amended complaint, Plaintiff states that he submitted a grievance but that staff at SCI Retreat tampered with it and refused to file it.  (Doc. No. 35 at 7.) He avers that only when this Court directed service of his complaint upon Defendants did staff "try to do damage control and go back and file the grievance." (*Id.*)  Plaintiff maintains that "[d]ue to this . . . being an ongoing issue, [his] life was at risk causing [him] to seek the Court's help."  (*Id.*)  Plaintiff, therefore, appears to contend that the administrative grievance process was rendered unavailable to him because of actions taken by staff at SCI Retreat.  Given these allegations, the Court

will not dismiss Plaintiff's amended complaint on the basis that he failed to exhaust at this time.[4]

### B.   Request to Consolidate Actions

In their brief in support of their motion to dismiss, Defendants request that this Court consolidate the above-captioned case with 1:19-cv-1989.  (Doc. No. 39 at 15.)  Defendants assert that consolidation is appropriate "given the apparent overlap of the facts, parties, and claims raised in the instant matter and the action docketed at 1:19-CV-1989." (*Id.*)  In that action, Plaintiff has filed suit against Mason, Jones, Phan, and Roxby, alleging that ever since filing his complaint in the above-captioned case, Defendants Jones, Phan, and Roxby have subjected him to multiple death threats, denied him medical attention after he suffered a seizure, and used excessive force against him.  *See Lewis v. Mason*, No. 1:19-cv-1989, 2020 WL 1637623, at *1 (M.D. Pa. Apr. 2, 2020).

As an initial matter, Defendants' request to consolidate is not properly before this Court because they never filed a motion requesting consolidation.  Defendants' motion to dismiss (Doc. No. 37) only requests dismissal of the amended complaint

---

[4] The Court notes further that the issue of administrative exhaustion is more properly addressed in a motion for summary judgment.  *See Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018); *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013).  Defendants may, if they decide to do so, raise their failure to exhaust defense in a properly-supported motion for summary judgment at the appropriate time.

and does not request consolidation.    Nevertheless, the Court will consider Defendants' request to consolidate.

The Federal Rules of Civil Procedure permit a court to consolidate actions involving common questions of law or fact.  *See* Fed. R. Civ. P. 42(a)(2).  In making the determination of whether to consolidate, "the [C]ourt balances the savings of time and effort gained through consolidation against the inconvenience, delay, or expense that it might cause."  *United States v. Dentsply Intern., Inc.*, 190 F.R.D. 140, 143 (D. Del. 1999); *see also A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (noting that under Rule 42(a), district courts have "broad power" to consolidate actions involving "common question[s] or fact or law").  The Court concludes that consolidation is not warranted.  While Plaintiff has named certain individuals as Defendants in both lawsuits, Plaintiff's complaint in 1:19-cv-1989 raises claims that occurred after he filed his complaint in the above-captioned case.   Moreover, Defendants in 1:19-cv-1989 have recently filed an answer to Plaintiff's complaint, and the parties are currently engaged in discovery. Accordingly, Defendants' request to consolidate will be denied.

## C.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely

deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The federal rules allow for liberal amendments in light of the "principle that the

purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*,

371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may

deny a motion to amend where there is "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment." *Id.*  The Court must also determine

that a proposed amendment would be futile if the complaint, as amended, would not

survive a motion to dismiss for failure to state a claim.  *In re NAHC, Inc. Sec. Litig.*,

306 F.3d 1314, 1332 (3d Cir. 2002).  In the instant case, the Court agrees with

Defendants that Plaintiff should be permitted to file a second amended complaint

with respect to his claims.  (Doc. No. 39 at 15.)  Accordingly, the Court will grant

him leave to file a second amended complaint with respect to his claims against

Defendant Wetzel and his First Amendment retaliation claim.  If Plaintiff chooses

to file a second amended complaint, he must also reassert his Eighth Amendment

claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and

Klick or that claim will be considered waived.  *See Knight v. Wapinsky*, No. 12-cv-

2023, 2013 WL 786339, at *3 (M.D. Pa. Mar. 1, 2013).

19

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 37) will be granted in part and denied in part.  The motion (Doc. No. 37) will be granted with respect to Plaintiff's claims against Defendant Wetzel as well as his First Amendment retaliation claim but denied as to his Eighth Amendment claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick.  The Court will also deny the motion (Doc. No. 37) to the extent that it seeks dismissal of the above-captioned case for failure to exhaust at this time.  Defendants' request to consolidate this action with 1:19-cv-1989 will be denied.  Plaintiff will be granted leave to file a second amended complaint with respect to his claims against Defendant Wetzel and his First Amendment retaliation claim.  If Plaintiff does not file a second amended complaint, the Court will proceed on his Eighth Amendment claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick.  An appropriate Order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Date: April 23, 2020