# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE LEWIS,          :
    **Plaintiff**         :
                 :     **No. 1:19-cv-1504**
    **v.**             :
                 :     **(Judge Rambo)**
**SUPERINTENDENT**     :
**MASON, *et al.*,**        :
    **Defendants**     :

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 66) filed by Defendants Superintendent Mason ("Mason"), C/O Jones ("Jones"), C/O Roxby ("Roxby"), Lieutenant Contreras ("Contreras"), Lieutenant Klick ("Klick"), C/O Zabresky ("Zabresky"), and C/O Phan ("Phan"). The motion is fully briefed and ripe for disposition.

## I.  BACKGROUND

On September 30, 2019, while incarcerated at the former State Correctional Institution Retreat in Hunlock Creek, Pennsylvania ("SCI Retreat"), *pro se* Plaintiff Andre Lewis ("Plaintiff") initiated the above-captioned action by filing a motion for a preliminary injunction and temporary restraining order against Defendants Mason ("Mason"), Deputy Banta ("Banta"), Deputy Stedler ("Stedler"), Jones, Roxby, and Contreras. (Doc. No. 1.) On September 5, 2019, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants John E. Wetzel ("Wetzel"), Mason, Captain

Eustice ("Eustice"), Klick, Contreras, Zabresky, Phan, Jones, Roxby, and C/O Gruden ("Gruden"). *See Lewis v. Wetzel*, No. 1:19-cv-1543 (M.D. Pa.). In an Order entered on September 11, 2019, the Court consolidated these actions because they "involve several of the same Defendants, arise from a common set of operative facts, and involve common questions of law." (Doc. No. 7 at 2.)

On December 2, 2019, Defendants filed a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. (Doc. No. 23.) On January 24, 2020, the Court received from Plaintiff a document in which he stated that he wished to dismiss Banta and Stedler as Defendants. (Doc. No. 29.) Plaintiff also stated that he wanted to "withdraw this suit with leave to amend the complaint." (*Id.*) In an Order dated January 27, 2020, the Court dismissed Defendants Banta and Stedler with prejudice and granted Plaintiff leave to file an amended complaint within thirty (30) days. (Doc. No. 31.) On February 5, 2020, the Court received a letter from Plaintiff, asking to withdraw his suit with leave to amend or refile the complaint. (Doc. No. 33.) In an Order dated February 10, 2020, the Court directed Plaintiff to either file his amended complaint by February 26, 2020 or notify the Court by that date if he wished to voluntarily dismiss the above-captioned action. (Doc. No. 34.)

The Court received Plaintiff's amended complaint on February 21, 2020. (Doc. No. 35.)[1] In his amended complaint, Plaintiff named Mason, Contreras, Phan, Zabresky, Jones, Roxby, Klick, and Wetzel as Defendants. (Doc. No. 35.) He avers that from June 27-29, 2019, while he was incarcerated at SCI Retreat, Defendants Phan, Jones, Roxby, Klick, Contreras, and Zabresky "all denied [him] liquid. They turned off all [his] cell water trying to kill [him] by dehydration." (*Id.* at 5.) Plaintiff notified Defendant Mason of the lack of water on June 28, 2019 and alleges that she responded by telling him to stop "giving [her] staff a hard time." (*Id.*) Plaintiff did not receive water until 5:00 a.m. on June 29 or 30, 2019 "after a medical emergency." (*Id.*) He maintains that he "suffered dehydration, chest pains, craps, and shortness of breath," and that a Registered Nurse "had to call for help to hydrate [him] and give [him a] breathing treatment." (*Id.*) Plaintiff asserted violations of his First and Eighth Amendment rights. (*Id.* at 3.)

Defendants filed a motion to dismiss the amended complaint on March 10, 2020. (Doc. No. 37.) Plaintiff did not file a response. In a Memorandum and Order dated April 23, 2020, the Court granted in part and denied in part the motion to dismiss. (Doc. Nos. 40, 41.) Specifically, the Court granted the motion as to

---

[1] In an Order dated February 25, 2020, the Court denied as moot Defendants' motion for a more definite statement given that Plaintiff had filed an amended complaint. (Doc. No. 36.)

Plaintiff's claims against Defendant Wetzel and his First Amendment retaliation claim but denied it as to his Eighth Amendment claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick. (*Id.*) The Court granted Plaintiff leave to file a second amended complaint and advised him that if he did not file a second amended complaint this matter would proceed on his Eighth Amendment claims only. (*Id.*)

On May 20, 2020, the Court received from Plaintiff a letter indicating that he would not be filing a second amended complaint. (Doc. No. 44.) Accordingly, in an Order dated May 21, 2020, the Court dismissed Defendants Wetzel, Eustice, and Gruden; noted that this matter would proceed as to Plaintiff's Eighth Amendment claims against Defendants Mason, Contreras, Phan, Zabresky, Jones, Roxby, and Klick; and directed the parties to complete discovery by November 18, 2020. (Doc. No. 45.)

After receiving an extension of time to file dispositive motions (Doc. Nos. 64, 65), Defendants filed their motion for summary judgment on February 4, 2021. (Doc. No. 66.) They filed their statement of material facts (Doc. No. 68) on February 5, 2021, and their brief in support on February 26, 2021 (Doc. No. 73). In its March 1, 2021 Order, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of

summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder.  (Doc. No. 75.)  Accordingly, the Court directed Plaintiff to respond to Defendants' motion within ninety (90) days.[2]  (*Id.*)  On April 5, 2021, Plaintiff filed what was originally docketed as a cross-motion for summary judgment and a brief in support thereof.  (Doc. Nos. 77, 78.)  On April 20, 2021, however, the Court received a letter from Plaintiff asking that his motion for summary judgment be treated as his response to Defendants' motion.  (Doc. No. 79.)  In an Order entered that same day, the Court directed the Clerk of Court to terminate Plaintiff's motion and amend the docket to reflect that Doc. Nos. 77 and 78 were Plaintiff's response to Defendants' motion, and noted that Defendants could file a reply brief within fourteen (14) days.  (Doc. No. 80.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[2] On February 18, 2021, the Court granted Plaintiff's motion for an extension of time to respond to Defendants' motion for summary judgment and directed him to file his response within ninety (90) days of the date on which Defendants filed their brief in support.  (Doc. Nos. 70, 71.)

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.    STATEMENT OF MATERIAL FACTS[3]

The DOC's administrative remedy process, set forth in DC-ADM 804, "provides inmates in its custody a mechanism to challenge various conditions of [their] confinement." (Doc. No. 68 ¶ 4.) "Plaintiff is intimately familiar with the

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts. (Doc. No. 68.) While Plaintiff did file a response to Defendants' motion, in which he includes a "statement of facts" (Doc. No. 78 at 4), his statement of disputed factual issues is not a response to Defendants' statement of facts that complies with Local Rule 56.1. Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

DOC's administrative remedy process and, during his incarceration, has filed more than 250 grievances." (*Id.* ¶ 5.) On June 25, 2019, Plaintiff was placed in grievance restriction, "as provided for in DC-ADM 804 § 3A[,] due to his prior filing [of] five (5) frivolous grievances within a 30-day period." (*Id.* ¶ 6.) This restriction period continued until September 25, 2019. (*Id.*) Although "Plaintiff could appeal being placed on grievance restriction by writing to the Facility Manager within 15 working days from the date of the notice of a grievance restriction, Plaintiff did not take any such appeal." (*Id.* ¶ 7.) Plaintiff was not precluded from filing grievances while under grievance restriction; instead, "he was limited to filing 'no more than one grievance each 15 working days.'" (*Id.* ¶ 8.)

"Plaintiff did not file any grievances between the dates of June 27, 2019 and July 13, 2019." (*Id.* ¶ 9.) While he was on grievance restriction, he filed seven (7) grievances, including Grievance No. 817128 regarding conditions of confinement. (*Id.* ¶ 10.) This grievance "was rejected on August 12, 2019 because it was not submitted within fifteen (15) working days of the events upon which the claims were based." (*Id.* ¶ 11.) Plaintiff submitted a request on August 14, 2019, asking Defendant Mason about the rejection of Grievance No. 817128. (*Id.* ¶ 12.) Defendant Mason responded on August 16, 2019, advising Plaintiff to resubmit his grievance and explain why it was timely. (*Id.* ¶ 13.)

Plaintiff resubmitted Grievance No. 817128 after filing his initial complaint in this matter on August 30, 2019.  (*Id.* ¶ 14.)  His resubmitted grievance "identified only 'Security,' 'Captain Eustice,' and 'Superintendent Mason,' and alleged they 'failed to report abuse,' subjected Plaintiff to 'torture,' and refused to give Plaintiff liquids leading to a medical emergency, causing him to 'cramp up, shortness of breath and chest pains.'"  (*Id.* ¶ 15.)  Plaintiff's resubmitted grievance was denied on September 25, 2019.  (*Id.* ¶ 16.)  Plaintiff appealed the denial to Defendant Mason on September 26, 2019.  (*Id.* ¶ 17.)  She denied the appeal on October 29, 2019.  (*Id.* ¶ 18.)  Plaintiff mailed an appeal of that denial to the Secretary's Office for Inmate Grievances and Appeals ("SOIGA") on October 30, 2019, but he did not include a copy of the resubmitted grievance.  (*Id.* ¶ 19.)  SOIGA responded to Plaintiff's appeal on November 20, 2019, "informing him of the need to provide a copy of that Resubmitted Grievance No. 817128."  (*Id.* ¶ 20.)  Plaintiff responded on November 23, 2019, but did not provide a copy of the resubmitted grievance.  (*Id.* ¶ 21.)  Plaintiff never sent SOIGA a copy of the resubmitted grievance.  (*Id.* ¶ 22.)  SOIGA dismissed Plaintiff's appeal on January 14, 2020.  (*Id.* ¶ 23.)

Plaintiff's allegations "involve his time in the A-ISO cell at SCI Retreat where he was placed at 10:47 am on June 27, 2019."  (*Id.* ¶ 3.)  Defendants aver that Plaintiff cannot produce admissible evidence to support his claims that: (1)

Defendants denied him liquid between June 27-29, 2019; (2) turned off his cell water between June 27-29, 2019; and (3) tried to kill him by dehydration between June 27-29, 2019. (*Id.* ¶ 24-44.) They also aver that Plaintiff cannot produce admissible evidence to support his claim that he suffered a medical emergency on June 29-30, 2019. (*Id.* ¶ 45.)

## IV. DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff cannot produce any competent evidence to support his Eighth Amendment claims. (Doc. No. 73 at 9.) The Court considers these arguments in turn below.

### A. Administrative Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *See id.* Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

12

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an

13

inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860. However, "once the defendant

14

has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that they are entitled to summary judgment because Plaintiff failed to file any grievance within the fifteen (15)-day time period for doing so and failed to appeal the rejection of his untimely-filed grievance before commencing this action. (Doc. No. 73 at 10-13.) The record before the Court indicates that Plaintiff filed Grievance No. 817128 regarding the events raised in his complaint on August 6, 2019. (Doc. No. 68 at 11.) This grievance "was rejected on August 12, 2019 because it was not submitted within fifteen (15) working days of the events upon which the claims were based." (*Id.* ¶ 11.) Plaintiff submitted a request on August 14, 2019, asking Defendant Mason about the rejection of Grievance No. 817128. (*Id.* ¶ 12.) Defendant Mason responded on August 16, 2019,

advising Plaintiff to resubmit his grievance and explain why it was timely. (*Id.* ¶ 13.)

Plaintiff resubmitted Grievance No. 817128 after filing his initial complaint in this matter on August 30, 2019. (*Id.* ¶ 14.) His resubmitted grievance "identified only 'Security,' 'Captain Eustice,' and 'Superintendent Mason,' and alleged they 'failed to report abuse,' subjected Plaintiff to 'torture,' and refused to give Plaintiff liquids leading to a medical emergency, causing him to 'cramp up, shortness of breath and chest pains.'" (*Id.* ¶ 15.) Plaintiff's resubmitted grievance was denied on September 25, 2019. (*Id.* ¶ 16.) Plaintiff appealed the denial to Defendant Mason on September 26, 2019. (*Id.* ¶ 17.) She denied the appeal on October 29, 2019. (*Id.* ¶ 18.) Plaintiff mailed an appeal of that denial to the Secretary's Office for Inmate Grievances and Appeals ("SOIGA") on October 30, 2019, but he did not include a copy of the resubmitted grievance. (*Id.* ¶ 19.) SOIGA responded to Plaintiff's appeal on November 20, 2019, "informing him of the need to provide a copy of that Resubmitted Grievance No. 817128." (*Id.* ¶ 20.) Plaintiff responded on November 23, 2019, but did not provide a copy of the resubmitted grievance. (*Id.* ¶ 21.) Plaintiff never sent SOIGA a copy of the resubmitted grievance. (*Id.* ¶ 22.) SOIGA dismissed Plaintiff's appeal on January 14, 2020. (*Id.* ¶ 23.)

While Plaintiff continued with the administrative exhaustion process after initiating the above-captioned action, as noted above, "a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi*, 165 F. App'x at 993. Plaintiff, however, argues that he tried to grieve in a timely fashion but was unable to because his requests for grievance materials were denied on several occasions. (Doc. No. 78 at 7.) In support, Plaintiff has submitted copies of inmate requests, dated June 13, 2019, July 8, 2019, and July 15, 2019 in which he complained that several staff members refused to provide grievance forms. (Doc. No. 78-1 at 12-14.) The Third Circuit has recognized that refusing to provide appropriate grievance forms in response to an inmate's inquiries for such renders an administrative remedy system unavailable. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

Plaintiff also suggests that Defendants thwarted the grievance process by failing to treat his grievance as an allegation of abuse and following the procedures set forth for such allegations in DC-ADM 001. (Doc. No. 78 at 9-10.) The record reflects that Plaintiff marked his August 6, 2019 grievance with "notice of abuse" or "notice of abuse/torture" on four (4) separate areas. (Doc. No. 78-1 at 16.) DC-ADM 001 states that allegations of abuse may be reported: (1) verbally or in writing; (2) by filing a grievance pursuant to DC-ADM 804; or (3) in writing to the DOC's

17

Office of Special Investigations and Intelligence. (Doc. No. 78-1 at 19.) However, in the event that the inmate chooses to report the alleged abuse by filing a grievance under DC-ADM 804, the allegations are still handled in accordance with DC-ADM 001's procedures. (Doc. No. 68 at 24.) If a grievance dealing with allegations of abuse is rejected, the Grievance Coordinator is to immediately forward a copy of the grievance to the Security Office to be investigated in accordance with DC-ADM 001. (*Id.* at 25.)

The Third Circuit "has not considered whether a Pennsylvania prisoner can exhaust these administrative remedies through DC-ADM 001, nor what steps would be necessary for the procedure." *Victor v. Lawlor*, 565 F. App'x 126, 129 (3d Cir. 2014). However, "many District Courts in Pennsylvania have found that allegations of abuse do not have to be filed through all levels of the DC-ADM 804 system if the inmate reports abuse through DC-ADM 001. In most instances, the District Courts assumed DC-ADM 001 to be an alternative to DC-ADM 804." *Freeman v. Wetzel*, No. 17-1506, 2020 WL 6730897, at *13 (W.D. Pa. Aug. 6, 2020) (collecting cases), *Report and Recommendation adopted*, 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020). Here, Plaintiff suggests that the grievance process was thwarted because his initial grievance was not properly treated as an allegation of abuse under DC-ADM 001. The Third Circuit has held that the PLRA "requires strict compliance by prison

officials with their own policies." *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019).

Defendants have not filed a reply brief and, therefore, have not responded to Plaintiff's arguments regarding administrative exhaustion. Given the state of the record, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Plaintiff such that his failure to timely exhaust his claims could be excused. Moreover, the record suggests that Plaintiff may have exhausted his claim pursuant to DC-ADM 001. Thus, the Court declines to grant summary judgment on the basis that Plaintiff failed to properly exhaust his administrative remedies. Accordingly, the Court considers the merits of Plaintiff's claims below.

### B. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.

*See id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *See id.*

### a.    Conditions of Confinement

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."  *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).  "[T]he Constitution does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities."  *See id.* at 347.  Such necessities include "adequate food, clothing, shelter, and medical care."  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, "extreme deprivations are required to make out a conditions-of-confinement claim."  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single,

identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

It is without question that access to water is one of the "minimal civilized measure[s] of life's necessities." *Rhodes*, 452 U.S. at 347. From the record before the Court, however, there is no genuine issue of material fact as to whether Defendants deliberately denied Plaintiff access to water. Nothing in the record before the Court suggests that Defendants turned off the water to Plaintiff's cell between June 27-29, 2019. Rather, the record establishes that Plaintiff had complained that the water pressure in the A-ISO cell was "higher than normal." (Doc. No. 73 at 27.) The water pressure issue became the subject of World Order 2019-RET-3169. (*Id.*) The Work Order "indicate[d] that plumbing maintenance staff determined a part was needed to be replaced to correct the issue, with said replacement being completed on July 2, 2019." (*Id.*)

Moreover, the record demonstrates that Plaintiff was under constant watch by medical staff for the entire time he was in the A-ISO cell. Plaintiff's medical records indicate that at no time did he ask for water or indicate that he had no access to water. (Doc. No. 83-1.) At one point, medical staff noted that Plaintiff's paper smock was "wet and torn." (*Id.* at 50.) At 4:30 a.m. on June 29, 2019, Plaintiff was removed

from the cell and drank three (3) eight-ounce cups of water. (*Id.* at 57.) He stated, "Thank you I told you the water didn't work right." (*Id.*) This statement, however, does not suggest that Plaintiff was completely deprived of water during his time in the A-ISO cell. At no time did medical staff note that Plaintiff exhibited signs of medical distress. (Doc. No. 83-1.)

In sum, Plaintiff has presented no evidence that creates a genuine issue of material fact as to whether Defendants deliberately deprived him of water during his time in the A-ISO cell. Rather, the record suggests that while there was a water pressure issue in the cell, Plaintiff was not completely deprived of water during this period. Moreover, Plaintiff was constantly monitored by medical staff, and while he received water at 4:30 a.m. on June 29, 2019, his medical records indicate that he never asked for water or fluids before then. Given the state of the record, the Court cannot conclude that the conditions of confinement violated Plaintiff's Eighth Amendment rights. *See Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (affirming grant of summary judgment because the record indicated that the inmate-plaintiff never asked for water or fluids and was constantly monitored by medical staff during his 77-hour hunger strike). The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's Eighth Amendment conditions of confinement claim.

### b.     Denial of Medical Care

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 842)).  Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that

23

the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Plaintiff appears to suggest that Defendants were deliberately indifferent to his medical needs, arguing that he suffered a medical emergency as a result of not being provided water. He asserts that RN Sharon Nichol noted that he was removed from his cell as a result of dehydration on June 29, 2019. (Doc. No. 78 at 10.) Plaintiff's medical records, however, indicate that he was under observation by medical staff during his time in the A-ISO cell. (Doc. No. 78-1 at 1-9.) There is no indication in these records that RN Nichol noted that Plaintiff was dehydrated during this time. In any event, Plaintiff has presented no evidence suggesting that Defendants, who are not medical providers, had "reason to believe (or actual knowledge) that prison doctors or their assistance [were] mistreating (or not treating)" him." *Spruill*, 372 F.3d at 236. Absent such evidence, Defendants cannot be charged "with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's denial of medical care claims.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc.

No. 66) will be granted.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: May 6, 2021